# KAYE SCHOLER LLC

Laura Pieper Schroeder
312 583-2373
lschroeder@kayescholer.com

3 First National Plaza
Suite 4100
70 West Madison Street
Chicago, Illinois 60602-4231
312 583-2300
Fax 312 583-2360
www.kayescholer.com

September 16, 2005

US District Court
District of Massachusetts
1 Courthouse Way
Boston, MA 02210

*05-MC-10338, NG*

> Re:    SEC v. Northshore Asset Management LLC, et al.
>          Case No. 05-2912 (RO); Honorable Richard Owens

Dear Clerk of the Court:

This is to advise you that Arthur Steinberg, the court-appointed receiver ("Receiver") for defendants Northshore Asset Management, LLC, Ardent Research Partners L.P., Ardent Research Partners, Ltd., and Saldutti Capital Management, L.P. (collectively, the "Defendants"), has taken exclusive jurisdiction over the receivership estate (the "Receivership Estate") in the above captioned action.

A portion of the property encompassed in the Receivership Estate may be locat in your jurisdiction. We therefore are enclosing for filing copies of the Complaint and Orders establishing the Receivership as required by 28 U.S.C. § 754. Please open as a miscellaneous case filing.

The United States District Court for the Southern District of New York, in an order staying all legal proceedings involving the Receivership Estate, prohibited the filing of  actions against the Receiver unless permission of the Court is first obtained.

The Receiver is in the process of ascertaining whether and where legal proceedings pertaining to the Receivership Estate are pending. Should the Receiver learn of relevant legal proceedings within the jurisdiction of your Court, the Receiver will promptly notify you.

We have enclosed extra copies of the Order entered on September 9, 2005 and docketed on September 12, 2005, which we request that you stamp filed and return in the enclosed self-addressed stamped envelope.

29031630.DOC

KAYE SCHOLER LLC

2                                          September 16, 200

Please do not hesitate to contact me if you have any questions.

Regards,

Laura Pieper Schroeder



**KAYE SCHOLER LLC**
3 FIRST NATIONAL PLAZA STE. 4100
70 W. MADISON STREET
CHICAGO, IL 60602

2982

DATE   September 16, 2005   $\frac{2\text{-}50}{710}$

PAY
TO THE
ORDER OF   Clerk of the District Court for the
District of Massachusetts                          $ 39.00

Thirty-nine --------------------------------------------00/100  DOLLARS

**LaSalle Bank N.A.**
Member ABN AMRO Group
Chicago, Illinois 60693
lasallebank.com

FOR   59023-0002

⑈OO 298 2⑈  ⑈O7 l000 50⑈  58OOO6 38O l⑈

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,

                     Plaintiff,

          -against-

NORTHSHORE ASSET MANAGEMENT, LLC,
ARDENT RESEARCH PARTNERS L.P.,
ARDENT RESEARCH PARTNERS, LTD.,
SALDUTTI CAPITAL MANAGEMENT, L.P.,
KEVIN KELLEY, ROBERT WILDEMAN, and
GLENN SHERMAN,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOCUMENT
ELECTRONICALLY [...]
DOC #:
DATE FILED: 7/12/05

Civil Action No.
05-CV- 2192 (RO)

## ORDER (1) CONVERTING THE TRO INTO A PRELIMINARY INJUNCTION WITH REGARD TO THE CORPORATE DEFENDANTS; (2) APPOINTING ARTHUR STEINBERG AS PERMANENT RECEIVER FOR THE RECEIVERSHIP ESTATE; AND (2) IDENTIFYING THE NORTHSHORE ENTITIES WHICH COMPRISE THE RECEIVERSHIP ESTATE

Upon the motion ("Motion") of Arthur Steinberg, the court-appointed receiver ("Receiver") for defendants Northshore Asset Management, LLC, Ardent Research Partners L.P., Ardent Research Partners, Ltd., and Saldutti Capital Management, L.P. (collectively, the "Corporate Defendants," and with their respective subsidiaries, affiliates, related entities and funds, the "Receivership Estate"), seeking a written order (i) converting the TRO into a preliminary injunction with regard to the Corporate Defendants *nunc pro tunc* to February 25, 2005; (ii) appointing the Receiver as permanent receiver for the Receivership Estate *nunc pro tunc* to February 25, 2005; and (iii) identifying the Northshore Related Entitles[2] that currently comprise the Receivership Estate (the "Motion"); and the Court having jurisdiction to

---

    [2]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

consider the Motion and the relief sought therein; and due notice of the Motion having been given, and it appearing that no other or further notice of the Motion need be provided; and the only objection to the Motion filed on behalf of the individual defendants Kevin Kelley, Robert Wildeman and Glenn Sherman on July 20, 2005 having been withdrawn pursuant to a Stipulation and Agreed Order entered by the Court; and the Court having determined that the relief sought in the Motion is in the best interest of the estates of the Receivership Estate and their creditors and all parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED, that the Motion is granted in all respects; and it is further

ORDERED, that the TRO is converted to a preliminary injunction with respect to the Corporate Defendants and the Receivership Estate and is in full force and effect *nunc pro tunc* to February 25, 2005; and it is further

ORDERED, that the Receiver is appointed as permanent receiver for the Receivership Estate and is empowered to take all the actions provided in Section XII of the TRO with respect to the Receivership Estate *nunc pro tunc* to February 25, 2005; and it is thither

ORDERED, that the following business entities and funds currently constitute the Receivership Estate:

| Name | Employee Identification Number |
|---|---|
| Northshore Asset Management LLC | 35-2170019 |
| Saldutti Capital Management | 13-3648200 |
| Ardent Research Partners LP | 13-3647076 |
| Ardent Research Partners Ltd. | 01-0779868 |
| LaSalle Family Office LLC Trust | 56-2297622 |
| Cousin Family LLC Trust | 56-2297614 |
| Dewey Family LLC Trust | 56-2297612 |
| Kelley Family LLC Trust | 56-2297615 |
| Sherman Family LLC Trust | 56-2297617 |

| | |
|---|---|
| Wildeman Family 2002 Special Trust | 16-6531576 |
| Weigand Family LLC Trust | 56-2297618 |
| Forte Family Office LLC Trust | 32-6015581 |
| Rose Family Office LLC Trust | 30-6044905 |
| Northshore Master Fund LLC | 20-1013738 |
| Northshore Fund LLC | 20-1013669 |
| Northshore Global Opportunities | 20-1013783 |
| Northshore IV | None |
| Northshore Special Situations Fund | 20-0976485 |
| Northshore Statistical Opportunity Fund | 20-0976438 |
| Randolph Special Situation Fund LLC | 32-0052860 |
| Northshore Asset Management LLC 401K Profit Sharing Plan& Trust | 20-1088356 |
| Guggenheim Portfolio Company LLC | None |
| Partners Group Alternative Strategies Ltd. | 01-0779873 |
| Northshore Associates | 20-1013604 |
| SKS LLC | None |
| Wildeman Holdings | 37-9849908 |
| Venture Development LP | None |

ORDERED, that notwithstanding the *nunc pro tunc* nature of certain provisions of this Order, the 10-day filing period set forth in 28 U.S.C. § 754 shall commence on the date this Order is entered on the docket.

ORDERED, that the requirement set forth in Rule 7.1 of the Local Civil Rules of the United States District Court for the Southern District of New York requiring the filing of a memorandum of law is hereby waived; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
September ___, 2005

UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,          :

                                    Plaintiff,                :

                                                              :
        -against-                                             :
                                                              :                Civil Action No.
NORTHSHORE ASSET MANAGEMENT, LLC,            :                05-CV- 2192 (RO)
ARDENT RESEARCH PARTNERS L.P.,                :
ARDENT RESEARCH PARTNERS, LTD.,               :
SALDUTTI CAPITAL MANAGEMENT, L.P.,            :
KEVIN KELLEY, ROBERT WILDEMAN, and           :
GLENN SHERMAN,                                :
                                                              :
                                    Defendants.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



## ORDER (1) CONVERTING THE TRO INTO A PRELIMINARY INJUNCTION WITH REGARD TO THE CORPORATE DEFENDANTS; (2) APPOINTING ARTHUR STEINBERG AS PERMANENT RECEIVER FOR THE RECEIVERSHIP ESTATE; AND (2) IDENTIFYING THE NORTHSHORE ENTITIES WHICH COMPRISE THE RECEIVERSHIP ESTATE

Upon the motion ("Motion") of Arthur Steinberg, the court-appointed receiver

("Receiver") for defendants Northshore Asset Management, LLC, Ardent Research

Partners L.P., Ardent Research Partners, Ltd., and Saldutti Capital Management, L.P.

(collectively, the "Corporate Defendants," and with their respective subsidiaries, affiliates,

related entities and funds, the "Receivership Estate"), seeking a written order (i) converting the

TRO into a preliminary injunction with regard to the Corporate Defendants *nunc pro tunc* to

February 25, 2005; (ii) appointing the Receiver as permanent receiver for the Receivership Estate

*nunc pro tunc* to February 25, 2005; and (iii) identifying the Northshore Related Entitles[2] that

currently comprise the Receivership Estate (the "Motion"); and the Court having jurisdiction to

---

[2]        All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the
Motion.

consider the Motion and the relief sought therein; and due notice of the Motion having been given, and it appearing that no other or further notice of the Motion need be provided; and the only objection to the Motion filed on behalf of the individual defendants Kevin Kelley, Robert Wildeman and Glenn Sherman on July 20, 2005 having been withdrawn pursuant to a Stipulation and Agreed Order entered by the Court; and the Court having determined that the relief sought in the Motion is in the best interest of the estates of the Receivership Estate and their creditors and all parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED, that the Motion is granted in all respects; and it is further

ORDERED, that the TRO is converted to a preliminary injunction with respect to the Corporate Defendants and the Receivership Estate and is in full force and effect *nunc pro tunc* to February 25, 2005; and it is further

ORDERED, that the Receiver is appointed as permanent receiver for the Receivership Estate and is empowered to take all the actions provided in Section XII of the TRO with respect to the Receivership Estate *nunc pro tunc* to February 25, 2005; and it is thither

ORDERED, that the following business entities and funds currently constitute the Receivership Estate:

| Name | Employee Identification Number |
|---|---|
| Northshore Asset Management LLC | 35-2170019 |
| Saldutti Capital Management | 13-3648200 |
| Ardent Research Partners LP | 13-3647076 |
| Ardent Research Partners Ltd. | 01-0779868 |
| LaSalle Family Office LLC Trust | 56-2297622 |
| Cousin Family LLC Trust | 56-2297614 |
| Dewey Family LLC Trust | 56-2297612 |
| Kelley Family LLC Trust | 56-2297615 |
| Sherman Family LLC Trust | 56-2297617 |

| | |
|---|---|
| Wildeman Family 2002 Special Trust | 16-6531576 |
| Weigand Family LLC Trust | 56-2297618 |
| Forte Family Office LLC Trust | 32-6015581 |
| Rose Family Office LLC Trust | 30-6044905 |
| Northshore Master Fund LLC | 20-1013738 |
| Northshore Fund LLC | 20-1013669 |
| Northshore Global Opportunities | 20-1013783 |
| Northshore IV | None |
| Northshore Special Situations Fund | 20-0976485 |
| Northshore Statistical Opportunity Fund | 20-0976438 |
| Randolph Special Situation Fund LLC | 32-0052860 |
| Northshore Asset Management LLC 401K Profit Sharing Plan& Trust | 20-1088356 |
| Guggenheim Portfolio Company LLC | None |
| Partners Group Alternative Strategies Ltd. | 01-0779873 |
| Northshore Associates | 20-1013604 |
| SKS LLC | None |
| Wildeman Holdings | 37-9849908 |
| Venture Development LP | None |

ORDERED, that notwithstanding the *nunc pro tunc* nature of certain provisions of this Order, the 10-day filing period set forth in 28 U.S.C. § 754 shall commence on the date this Order is entered on the docket.

ORDERED, that the requirement set forth in Rule 7.1 of the Local Civil Rules of the United States District Court for the Southern District of New York requiring the filing of a memorandum of law is hereby waived; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
    September __9__, 2005

UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
                            Plaintiff,        :
                                              :
            - against -                       :
                                              :
NORTHSHORE ASSET MANAGEMENT, LLC.,            :
ARDENT RESEARCH PARTNERS L.P.,                :        05 Civ.  2192 (RO)
ARDENT RESEARCH PARTNERS LTD.,                :
SALDUTTI CAPITAL MANAGEMENT, L.P.,            :
KEVIN KELLEY, ROBERT WILDEMAN,                :
and GLENN SHERMAN,                            :
                                              :
                            Defendants.       :
                                              :
-----------------------------------------------------------x

## STIPULATION AND PRELIMINARY INJUNCTION ORDER

Plaintiff Securities and Exchange Commission ("Commission") and defendants Robert

Wildeman ("Wildeman"), Glenn Sherman ("Sherman"), and Kevin Kelley ("Kelley")

(collectively, "Defendants"), and non-party Jami J. Wildeman, through their respective

undersigned counsel, hereby stipulate and agree that, upon execution by the Court of this

Stipulation and Preliminary Injunction Order, the Court's "Order To Show Cause, Temporary

Restraining Order And Order Freezing Assets And Granting Other Relief" entered on February

16, 2005 ("February 16 Order"), is hereby converted to a preliminary injunction Order as to

defendants Wildeman Sherman, and Kelley,[1] and Defendants' obligations and restraints under

the February 16 Order, whether temporary or otherwise (including their obligation to provide an

accounting), thus continue and remain in full force and effect, subject to the following limited

---

[1] At the Court's February 25, 2005 preliminary injunction hearing in this case, the Court entered a
preliminary injunction as to the remaining defendants in this case, and continued the appointment of the
previously-appointed receiver for those entities.

1

exceptions and conditions:

A.  **Defendant Kelley:**

1.    Defendant Kelley may spend up to a total of $3,000 of his own cash for any reasonable purpose.

2.    Defendant Kelley may apply to the Court for modification of the preliminary injunction asset freeze as necessary, due to any changed circumstances and for good cause shown, to preserve the value of his assets and/or to pay his reasonable and necessary living expenses.

B.  **Defendant Wildeman:**

1.    Defendant Wildeman may spend up to $13,000 per month from his own assets on reasonable and necessary living expenses.

2.    Defendant Wildeman may pay from his own assets his reasonable and necessary attorney fees incurred, and that might be incurred, in defending this litigation from February 16, 2005 through April 8, 2005. Prior to paying such fees, Mr. Wildeman shall seek approval in writing from the Commission of the proposed amount of such fees. If the parties are unable to reach agreement regarding the amount of such attorney fees, defendant Wildeman shall seek approval from the Court of his proposed attorney fees prior to paying such fees.

3.    Defendant Wildeman shall not pay either his living expenses or attorney fees described above from any private placement securities or investments directly or indirectly held in his or his wife's name.

4.    To the extent defendant Wildeman and his wife, Jami J. Wildeman, jointly or commonly own any real property, defendant Wildeman and Jami J. Wildeman hereby agree to treat such real property as wholly-owned by defendant Wildeman for the purpose of the

2

Commission's collection of any monetary judgment it might obtain against defendant Wildeman, and defendant Wildeman and Jami J. Wildeman thus waive any objection or defense that either might have based upon such co-ownership to the Commission's right to satisfy any such judgment from such real property.

### C.    Defendant Sherman

1.    Defendant Sherman may spend up to $10,500 per month from his own assets, or assets that he holds jointly with his wife, on reasonable and necessary living expenses.

2.    Defendant Sherman may pay from his own assets, or assets he jointly holds with his wife, 50% of his reasonable and necessary attorney fees incurred, and that might be incurred, in defending this litigation from February 16, 2005 through April 8, 2005. Prior to paying such fees, Mr. Sherman shall seek approval in writing from the Commission of the proposed amount of such fees. If the parties are unable to reach agreement regarding the amount of such attorney fees, defendant Sherman shall seek approval from the Court of his proposed attorney fees prior to paying such fees.

3.    Defendant Sherman shall not pay either his living expenses or attorney fees described above from any private placement securities or investments directly or indirectly held in his or his wife's name.

The Commission enters into this Stipulation and Preliminary Injunction Order, in part, upon the basis of certain financial information that defendants Kelley, Sherman and Wildeman have provided to the Commission. In the event the Commission determines that any such information is materially false or inaccurate, the Commission may petition the Court to revise or revoke this Stipulation and Order. Defendants may seek to modify this preliminary injunction to the extent and in the manner provided by applicable law.

_____                    Date:_____

Mark L. Rotert, Esq.
Law Offices of Mark L. Rotert
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 236-8115
**Counsel for Robert and Jami Wildeman**


_____                    Date:_____

Jonathan D. King, Esq.
DLA Piper Rudnick, Gray, Cary
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
312-368-7095
**Counsel for Glenn Sherman**


_____                    Date:_____

David Grudberg, Esq.
Jacobs, Grudberg, Belt, Dow & Katz P.C.
350 Orange Street
New Haven, CT 06503
(203) 772-3100
**Counsel for Kevin Kelley**


_____                    Date: 3/10/05

Jack Kaufman, Esq.  (JK-3050)
Senior Trial Counsel
United States Securities and Exchange Commission
233 Broadway
New York, NY 10279
**Counsel for the Commission**


**SO ORDERED**


_____
HON. RICHARD OWEN
UNITED STATES DISTRICT JUDGE


_____, 2005
New York, New York

4

*Mark L. Rotert*　　　　　　　　　Date: 3/9/05
Mark L. Rotert, Esq.
Law Offices of Mark L. Rotert
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 236-8115
Counsel for Robert and Jami Wildeman

_____    Date:_____
Jonathan D. King, Esq.
DLA Piper Rudnick, Gray, Cary
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
312-368-7095
Counsel for Glenn Sherman

_____    Date:_____
David Grudberg, Esq.
Jacobs, Grudberg, Belt, Dow & Katz P.C.
350 Orange Street
New Haven, CT 06503
(203) 772-3100
Counsel for Kevin Kelley

_____    Date: _____
Jack Kaufman, Esq.  (JK-3050)
Senior Trial Counsel
United States Securities and Exchange Commission
233 Broadway
New York, NY 10279
Counsel for the Commission

**SO ORDERED**

_____
HON. RICHARD OWEN
UNITED STATES DISTRICT JUDGE

_____, 2005
New York, New York

4

Date:_____

Mark L. Rotert, Esq.
Law Offices of Mark L. Rotert
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 236-8115
Counsel for Robert and Jami Wildeman


Date:_____

Jonathan D. King, Esq.
DLA Piper Rudnick, Gray, Cary
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
312-368-7095
Counsel for Glenn Sherman


Date:_____

David Grudberg, Esq.
Jacobs, Grudberg, Belt, Dow & Katz P.C.
350 Orange Street
New Haven, CT 06503
(203) 772-3100
Counsel for Kevin Kelley


Date:_____

Jack Kaufman, Esq. (JK-3050)
Senior Trial Counsel
United States Securities and Exchange Commission
233 Broadway
New York, NY 10279
Counsel for the Commission


**SO ORDERED**


_____

HON. RICHARD OWEN
UNITED STATES DISTRICT JUDGE


_____, 2005
New York, New York


4

Date:_____

Mark L. Rotert, Esq.
Law Offices of Mark L. Rotert
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 236-8115
Counsel for Robert and Jami Wildeman

Date:_____

Jonathan D. King, Esq.
DLA Piper Rudnick, Gray, Cary
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
312-368-7095
Counsel for Glenn Sherman

Date: 3 - 10 -05

David Grudberg, Esq.
Jacobs, Grudberg, Belt, Dow & Katz P.C.
350 Orange Street
New Haven, CT 06503
(203) 772-3100
Counsel for Kevin Kelley

Date: _____

Jack Kaufman, Esq. (JK-3050)
Senior Trial Counsel
United States Securities and Exchange Commission
233 Broadway
New York, NY 10279
Counsel for the Commission

SO ORDERED

_____
HON. RICHARD OWEN
UNITED STATES DISTRICT JUDGE

3/10 , 2005
New York, New York

4

GRIESA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :

                 **Plaintiff,**    :

          - against -    :

NORTHSHORE ASSET MANAGEMENT, LLC.,    :
ARDENT RESEARCH PARTNERS L.P.,
ARDENT RESEARCH PARTNERS LTD.,    :
SALDUTTI CAPITAL MANAGEMENT, L.P.,
KEVIN KELLEY, ROBERT WILDEMAN,    :
and GLENN SHERMAN,

           **Defendants.**    :

------------------------------------------------------------x



JUDGE GRIESA

05 CV Civ. 2192

USM 5W SDNY

### ORDER TO SHOW CAUSE,
### TEMPORARY RESTRAINING ORDER,
### AND ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF

On the Application of Plaintiff Securities and Exchange Commission (the "Commission")

for an Order:

(1)    directing Defendants Northshore Asset Management, LLC ("Northshore"), Ardent

Research Partners L.P. ("Ardent Domestic"), Ardent Research Partners Ltd. ("Ardent Offshore"),

Saldutti Capital Management, L.P. ("SCM"), Kevin Kelley ("Kelley"), Robert Wildeman

("Wildeman"), and Glenn Sherman ("Sherman") (collectively, "the Defendants") to show cause

why an order should not be entered, pending a final disposition of this action:

(a)    preliminarily enjoining

    (i)    the Defendants from violating Section 17(a) of the

             Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a);

             Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"),

             15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5;

             and

    (ii)    Defendants Northshore, SCM, Kelley, Wildeman and Sherman from

             violating Sections 206(1) and 206(2) of the Investment Advisers Act of

             1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) and 80b-6(2);

  (b)    freezing the Defendants' assets as specified herein;

  (c)    appointing a receiver for Northshore, SCM, Ardent Domestic, and Ardent

        Offshore;

  (d)    directing each of the Defendants to provide verified accountings immediately; and

  (e)    prohibiting the destruction or alteration of documents.

(2)    pending adjudication of the foregoing, an Order

  (a)    temporarily restraining the Defendants from violating the aforementioned statutes

        and rules;

  (b)    temporarily enjoining the Defendants, and their agents, employees, attorneys, or

        other professionals, and anyone acting in concert with them, from prosecuting or

        otherwise taking or continuing any action in the Bankruptcy Court for the

        Northern District of Illinois.

  (c)    freezing the Defendants' assets as specified herein;

(d)     appointing a temporary receiver for Northshore, SCM, Ardent Domestic, and

        Ardent Offshore;

(e)     directing each of the Defendants to provide verified accountings immediately;

(f)     prohibiting the destruction and alteration of documents; and

(g)     providing that the Commission may take expedited discovery in preparation for a

        hearing on this Order to Show Cause.

The Court has considered (1) the Complaint filed by the Commission on February 15,

2005; (2) the Declaration of Andrea Hart, executed on February 15, 2005; and (3) the

memorandum of law in support of Plaintiff Commission's application.

Based upon the foregoing documents, the Court finds that a proper showing, as required

by Section 20(b) of the Securities Act, Section 21(d) of the Exchange Act, and Section 209 of the

Advisers Act, has been made for the relief granted herein, for the following reasons:

1.      It appears from the evidence presented that

        (a)     the Defendants have violated, and, unless temporarily restrained, will

                continue to violate, Section 17(a) of the Securities Act, and Section 10(b)

                of the Exchange Act and Exchange Act Rule 10b-5, as charged in the

                Complaint;

        (b)     Defendants Northshore and SCM have violated, and Defendants Kelley,

                Wildeman, and Sherman have aided and abetted Defendants' Northshore's

                and SCM's violations, and unless temporarily restrained, will continue to

                violate, or aid and abet violations of, Sections 206(1) and 206(2) of the

                Advisers Act, as charged in the Complaint.

3

2.    It appears that an order freezing the Defendants' assets, as specified herein, is necessary to preserve the *status quo*, and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties, and to preserve the Court's ability to approve a fair distribution for victims of the fraud.

3.    It appears that an order requiring each of the Defendants to provide a verified accounting of all assets, money and property held directly or indirectly by each of the Defendants, or by others for each of their direct and indirect beneficial interest, is necessary to effectuate and ensure compliance with the freeze imposed on the Defendants' assets.

4.    It appears that the Defendants may attempt to destroy, alter or conceal documents.

5.    It appears that the appointment of a temporary receiver is necessary to (i) preserve the *status quo*, (ii) ascertain the true financial condition of Northshore, SCM, Ardent Domestic, and Ardent Offshore and the disposition of investor funds, (iii) prevent the further misappropriation or misuse of the property and assets of Northshore, SCM, Ardent Domestic, and Ardent Offshore, (iv) prevent the encumbrance or disposal of property or assets of Northshore, SCM, Ardent Domestic, and Ardent Offshore, (v) bring Northshore, SCM, Ardent Domestic, and Ardent Offshore into compliance with the law, and (vi) prevent the Defendants, their attorneys and agents, from utilizing the Chapter 11 bankruptcy process to dissipate or otherwise dispose of the assets of Northshore, SCM, Ardent Domestic, and Ardent Offshore.

6.    Good and sufficient reasons have been shown why procedures other than by notice of motion is necessary.

7.    This Court has jurisdiction over the subject matter of this action and over the Defendants, and venue properly lies in this District.

4

**NOW, THEREFORE,**

**I.**

IT IS HEREBY ORDERED that the Defendants show cause, if there be any, to this Court at _10 30_ a.m. on the _3d_ day of _feby_, 2005, in Room _____ of the United States Courthouse, _26 B, 700 Penn St_, New York, New York 10007 why this Court should not enter an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, Section 20 of the Securities Act, Section 21 of the Exchange Act, and Section 209 of the Advisers Act preliminarily enjoining

(1)     the Defendants from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5;

(2)     Defendants Northshore, SCM, Kelley, Wildeman, and Sherman from violating Sections 206(1) and 206(2) of the Advisers Act.

**II.**

IT IS FURTHER ORDERED that the Defendants show cause at that time why this Court should not also enter an Order directing that, pending a final disposition of this action, the Defendants, and each of their financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the

5

Defendants, whether held in any of their names or for any of their direct or indirect beneficial interest wherever situated, including, but not limited to, all assets, funds, or other properties held in the following accounts:

| Account Number | Institution | Name of Account Holder |
|---|---|---|
| 118-12973-1-6 | Banc of America Securities | Ardent Research Partners, L.P. |
| 118-01408-1-4 | Banc of America Securities | Ardent Research Partners, L.P. |
| 66198038 | Citigroup Global Markets, Inc. | Ardent Research Partners, L.P. |
| 522-43132-1-2 | JP Morgan Chase & Co. | Ardent Research Partners, L.P. |
| 313-12985-1-9 | Banc of America Securities | Ardent Research Partners, Ltd. |
| 313-13072-1-1 | Banc of America Securities | Ardent Research Partners, Ltd. |
| 7210023771 | Harris Bank | Northshore Asset Management, LLC |
| 071 000 770 533 034 3739 | American National Bank & Trust Co | Northshore Asset Management, LLC |
| 970 01963 | Jeffries & Co. Securities | Northshore Asset MGMT LLC |
| 970 02168 | Jeffries & Co. Securities | Northshore Asset MGMT LLC |
| 374-66019 | Jeffries & Co. Securities | Ardent Research |
| 374-66019 | Nations Banc Montgomery Sec | Ardent Research |
| 374-66019 | Prime Brokerage Service | Ardent Research |

## III.

**IT IS FURTHER ORDERED** that the Defendants show cause at that time why this Court should not also enter an Order directing that they each file with this Court and serve upon Plaintiff Commission, within three (3) business days, or within such extension of time as the Commission agrees to, a verified written accounting, signed by each of the Defendants, and under penalty of perjury, of:

(1)    All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of the Defendants, including, without limitation, bank accounts,

6

brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)    All money, property, assets and income received by the Defendants and each of them, or for their direct or indirect benefit, at any time from January 1, 2003 through the date of such accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)    The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of the Defendants; and

(4)    All assets, funds, securities, and real or personal property received by the Defendants, and each of them, or any other person controlled by them, from persons who provided money to the Defendants in connection with the offer, purchase or sale of Ardent Domestic and Ardent Offshore securities, from January 1, 2003 to the date of the accounting, and the disposition of such assets, funds, securities, real or personal property.

### IV.

IT IS FURTHER ORDERED that the Defendants show cause at that time why this Court should not also enter an Order enjoining and restraining them, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing or otherwise interfering with the access of the Plaintiff Commission to any and all documents, books, and records, that are in the possession, custody or control of the Defendants, their officers, agents,

7

employees, servants, accountants, financial or brokerage institutions, or attorneys-in-fact, that

refer, reflect or relate to the allegations in the Complaint, including, without limitation,

documents, books, and records referring, reflecting or relating to the Defendants' finances or

business operations, or the offer, purchase or sale of Ardent Domestic and Ardent Offshore

securities and the use of proceeds therefrom.

## V.

IT IS FURTHER ORDERED that the Defendants show cause at that time why this

Court should not also enter an Order appointing or continuing the appointment of a receiver for

Northshore, SCM, Ardent Domestic, and Ardent Offshore to (1) preserve the status quo, (2)

ascertain the financial condition of Northshore, SCM, Ardent Domestic, and Ardent Offshore,

and the disposition of investor funds, (3) prevent further dissipation of Northshore, SCM, Ardent

Domestic, and Ardent Offshore's property and assets, to prevent loss, damage, and injury to

investors, (4) preserve Northshore, SCM, Ardent Domestic, and Ardent Offshore's books,

records, and documents, and (5) be available to respond to investor inquiries. To effectuate the

foregoing, the temporary receiver would be empowered to:

    (a)    Take and retain immediate possession and control of all of Northshore, SCM,

    Ardent Domestic, and Ardent Offshore's (and each's subsidiaries and affiliates,

    including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC;

    NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners) assets

    and property, and all books, records, and documents of Northshore, SCM, Ardent

    Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including,

    but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global

8

Opp Fund; NS Special Situation Fund I; and NSAM Partners), and all of Northshore, SCM, Ardent Domestic, and Ardent Offshore's (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners) rights and powers with respect thereto;

(b)    Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any assets or funds of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners);

(c)    Pay from available funds necessary business expenses required to preserve Northshore, SCM, Ardent Domestic, and Ardent Offshore's (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners) assets and property, including the books, records, and documents of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners), notwithstanding the asset freeze imposed by paragraph II, above;

9

(d)     Take preliminary steps to locate assets that may have been conveyed to third

parties or otherwise concealed;

(e)     Take preliminary steps to ascertain the disposition and use of funds obtained by

Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries

and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor

Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM

Partners) resulting from the sale of securities issued by Ardent Domestic and

Ardent Offshore;

(f)     Engage and employ persons, including accountants, attorneys and experts, to

assist in the carrying out of the temporary receiver's duties and responsibilities

hereunder;

(g)     Appear in the Bankruptcy Court in the Northern District of Illinois and take all

necessary actions to preserve the assets of Northshore, SCM, Ardent Domestic,

and Ardent Offshore (and each's subsidiaries and affiliates, including, but not

limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp

Fund; NS Special Situation Fund I; and NSAM Partners), and if appropriate, to

determine whether to prosecute or seek dismissal of the Chapter 11 case in the

Northern District of Illinois, file for relief and protection under the United States

Bankruptcy Code on behalf of Ardent Domestic and Ardent Offshore (and each's

subsidiaries and affiliates) after notice to all parties in this action;

(h)     Make, demand, file or otherwise handle any claim under any insurance policy held

by or issued on behalf of Northshore, SCM, Ardent Domestic, and Ardent

10

Offshore (and each's subsidiaries and affiliates, including, but not limited to,

NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS

Special Situation Fund I; and NSAM Partners), their officers, directors, agents,

employees, trustees or other person affiliated with them, and to take any and all

steps in connection with such policies;

(i)     Take discovery in this action without further order of the Court; and

(j)     Take such further action as the Court shall deem equitable, just and appropriate

under the circumstances upon proper application of the temporary receiver.

## VI.

IT IS FURTHER ORDERED that, pending a hearing and determination of the

Commission's Application for Preliminary Injunction, the Defendants, and each of them, their

agents, servants, employees, and attorneys-in-fact, and those persons in active concert or

participation with them who receive actual notice of this Order by personal service, facsimile

service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert,

in the offer or sale of any security, by use of any means or instruments of transportation or

communication in interstate commerce or by use of the mails:

(a)     employing any device, scheme or artifice to defraud;

(b)     obtaining money or property by means of an untrue statement of material fact or

omitting to state a material fact necessary to make the statements made, in light of

the circumstances under which they were made, not misleading; and

(c)     engaging in any transaction, practice or course of business which operates or

would operate as a fraud or deceit upon the purchaser,

11

in violation of Section 17(a) of the Securities Act.

## VII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for Preliminary Injunction, the Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, in connection with the purchase or sale of any security, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange:

    (a)    employing any device, scheme, or artifice to defraud;

    (b)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

## VIII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for Preliminary Injunction, the Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert,

12

while acting as an investment adviser or associated person of an investment adviser, by the use of any means or instrumentality of interstate commerce, or of the mails:

      (a)     employing any device, scheme, or artifice to defraud any client or prospective client; or

      (b)     engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any client or prospective client,

in violation of Sections 206(1) and 206(2) of the Advisers Act.

### IX.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants, and each of their financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the Defendants, whether held in any of their names or for any of their direct or indirect beneficial interest wherever

13

situated, including, but not limited to, all assets, funds, or other properties held in the following

accounts:

| Account Number | Institution | Name of Account Holder |
|---|---|---|
| 118-12973-1-6 | Banc of America Securities | Ardent Research Partners, L.P. |
| 118-01408-1-4 | Banc of America Securities | Ardent Research Partners, L.P. |
| 66198038 | Citigroup Global Markets, Inc. | Ardent Research Partners, L.P. |
| 522-43132-1-2 | JP Morgan Chase & Co. | Ardent Research Partners, L.P. |
| 313-12985-1-9 | Banc of America Securities | Ardent Research Partners, Ltd. |
| 313-13072-1-1 | Banc of America Securities | Ardent Research Partners, Ltd. |
| 7210023771 | Harris Bank | Northshore Asset Management, LLC |
| 071 000 770 533 034 3739 | American National Bank & Trust Co | Northshore Asset Management, LLC |
| 970 01963 | Jeffries & Co. Securities | Northshore Asset MGMT LLC |
| 970 02168 | Jeffries & Co. Securities | Northshore Asset MGMT LLC |
| 374-66019 | Jeffries & Co. Securities | Ardent Research |
| 374-66019 | Nations Banc Montgomery Sec | Ardent Research |
| 374-66019 | Prime Brokerage Service | Ardent Research |

## X.

IT IS FURTHER ORDERED that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, the Defendants file with this Court and

serve upon Plaintiff Commission, within three (3) business days, or within such extension of

time as the Commission agrees to, a verified written accounting signed by each of the Defendants

under penalty of perjury, of:

      (1)     All assets, liabilities and property currently held, directly or indirectly, by or for

                 the benefit of the Defendants, including, without limitation, bank accounts,

                 brokerage accounts, investments, business interests, loans, lines of credit, and real

14

and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)    All money, property, assets and income received by the Defendants, and each of them, or for their direct or indirect benefit, at any time from January 1, 2003 through the date of such accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)    The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of the Defendants; and

(4)    All assets, funds, securities, and real or personal property received by the Defendants, and each of them, or any other person controlled by them, from persons who provided money to the Defendants in connection with the offer, purchase or sale of Ardent Domestic and Ardent Offshore securities, from January 1, 2003 to the date of the accounting, and the disposition of such assets, funds, securities, real or personal property.

## XI.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants, and any person or entity acting at their direction or on their behalf, be and hereby are enjoined and restrained from destroying, altering, concealing or otherwise interfering with the access of Plaintiff Commission to any and all documents, books, and records that are in the possession, custody or control of the Defendants, their officers, agents, employees, servants, accountants, financial or brokerage

15

institutions, or attorneys-in-fact, that refer, reflect or relate to the allegations in the Complaint, including, without limitation, documents, books and records referring, reflecting or relating to the Defendants' finances or business operations, or the offer, purchase, or sale of Ardent Domestic and Ardent Offshore securities and the use of proceeds therefrom.

## XII.

**IT IS FURTHER ORDERED**, that _ArTHur Steinberg_, pending further 

order of this Court, be and hereby is appointed to act as temporary receiver for Northshore, SCM, Ardent Domestic, and Ardent Offshore to (1) preserve the status quo, (2) ascertain the financial condition of Northshore, SCM, Ardent Domestic, and Ardent Offshore, and the disposition of investor funds, (3) prevent further dissipation of Northshore's, SCM's, Ardent Domestic's, and Ardent Offshore's property and assets, to prevent loss, damage, and injury to investors, (4) preserve Northshore, SCM, Ardent Domestic, and Ardent Offshore's books, records, and documents, and (5) be available to respond to investor inquiries. To effectuate the foregoing, the temporary receiver is hereby empowered to:

(a)     Take and retain immediate possession and control of all of Northshore, SCM, Ardent Domestic, and Ardent Offshore's (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners) assets and property, and all books, records, and documents of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners), and all of

16

Northshore, SCM, Ardent Domestic, and Ardent Offshore's (and each's

subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT,

LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I;

and NSAM Partners) rights and powers with respect thereto;

(b)     Have exclusive control of, and be made the sole authorized signatory for, all

accounts at any bank, brokerage firm or financial institution that has possession or

control of any assets or funds of Northshore, SCM, Ardent Domestic, and Ardent

Offshore (and each's subsidiaries and affiliates, including, but not limited to,

NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS

Special Situation Fund I; and NSAM Partners);

(c)     Pay from available funds necessary business expenses required to preserve

Northshore's, SCM's, Ardent Domestic's, and Ardent Offshore's (and each's

subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT,

LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I;

and NSAM Partners) assets and property, including the books, records, and

documents of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and

each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC;

NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation

Fund I; and NSAM Partners), notwithstanding the asset freeze imposed by

paragraph IX, above;

(d)     Take preliminary steps to locate assets that may have been conveyed to third

parties or otherwise concealed;

17

(e)    Take preliminary steps to ascertain the disposition and use of funds obtained by Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners) resulting from the sale of securities issued by Ardent Domestic and Ardent Offshore;

(f)    Engage and employ persons, including accountants, attorneys and experts, to assist in the carrying out of the temporary receiver's duties and responsibilities hereunder;

(g)    Appear in the Bankruptcy Court in the Northern District of Illinois and take all necessary actions to preserve the assets of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS Special Situation Fund I; and NSAM Partners), and if appropriate, to determine whether to prosecute or seek dismissal of the Chapter 11 case in the Northern District of Illinois, file for relief and protection under the Federal Bankruptcy Code on behalf of Ardent Domestic and Ardent Offshore (and each's subsidiaries and affiliates) after notice to all parties in this action;

(h)    Make, demand, file or otherwise handle any claim under any insurance policy held by or issued on behalf of Northshore, SCM, Ardent Domestic, and Ardent Offshore (and each's subsidiaries and affiliates, including, but not limited to, NSCT, LLC; NSCT, LLC-CTC; Astor Fund, LLC; NS Global Opp Fund; NS

18

Special Situation Fund I; and NSAM Partners), their officers, directors, agents, employees, trustees or other person affiliated with them, and to take any and all steps in connection with such policies;

(i)    Take discovery in this action without further order of the Court; and

(j)    Take such further action as the Court shall deem equitable, just and appropriate under the circumstances upon proper application of the temporary receiver.

### XIII.

**IT IS FURTHER ORDERED** that the temporary receiver and all persons who may be engaged or employed by the temporary receiver to assist him in carrying out his duties and obligations hereunder shall not be liable for any act or omission of the temporary receiver or such person, respectively, or any of their partners, employees, or agents, unless it shall be proven that the temporary receiver or such other person in bad faith acted or omitted to act. This provision shall apply to claims based on conduct during the term of any agreement that may be entered into between the temporary receiver and any other person who may be engaged or employed by the temporary receiver hereunder, even if such claims are filed after the termination of any such agreement.

### XIV.

**IT IS FURTHER ORDERED** that the Northshore, Ardent Domestic, Ardent Offshore and SCM shall pay the reasonable costs, fees and expenses of the temporary receiver incurred in connection with the performance of his respective duties described herein, including, but not limited to, the reasonable costs, fees and expenses of all persons who may be engaged or employed by the temporary receiver to assist him in carrying out his duties and obligations. The temporary receiver shall be compensated at a rate of $\_500\_ per hour. All applications for costs, fees and expenses of the temporary receiver and those employed by him shall be made by

19

application to the Court setting forth in reasonable detail the nature of such costs, fees and expenses.

### XV.

IT IS FURTHER ORDERED that discovery is expedited as follows: pursuant to Rules 26, 30, 31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure ("F.R.C.P."), and without the requirement of a meeting pursuant to F.R.C.P. 26(f), the Commission may:

(1)     Take depositions, subject to three (3) days' notice by facsimile or otherwise;

(2)     Obtain the production of documents, within three (3) days from service by facsimile or otherwise of a request or subpoena, from the Defendants, or any other persons or entities, including non-party witnesses;

(3)     Obtain other discovery from the Defendants, including further interrogatories and requests for admissions, within three (3) days from the date of service by facsimile or otherwise of such other discovery requests, interrogatories, or requests for admissions; and

(4)     Service of any discovery requests, notices, or subpoenas may be made by personal service, facsimile, overnight courier, or first-class mail.

### XVI.

IT IS FURTHER ORDERED that a copy of this Order and the papers supporting the Commission's Application be served upon the Defendants on or before _____ , 2005, by personal delivery, facsimile, overnight courier, or first-class mail.

20

## XVII.

by hand.

IT IS FURTHER ORDERED that the Defendants shall deliver any opposing papers in response to the Order to Show Cause above no later than _February 24_, 2005, at 4:00 p.m. Service shall be made by delivering the papers, ~~using the most expeditious means available~~, by that date and time, to the Northeast Regional Office of the Commission at 233 Broadway, 6th Floor, New York, New York 10279, Attn: Jack Kaufman, Esq., or such other place as counsel for the Commission may direct in writing. The Commission shall ~~have until~~ _____ , 2005, at 5:00 p.m., to serve, by the most expeditious means available, any reply papers upon the Defendants, or upon their counsel, if counsel shall have made an appearance in this action then.

## XVIII.

IT IS FURTHER ORDERED that this Order shall be, and is, binding upon the Defendants, and each of their officers, agents, servants, employees and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

_____
UNITED STATES DISTRICT JUDGE

Issued at : ____3:10____ p. .m.
____2/16____ , 2005
New York, New York

21

MARK K. SCHONFELD (MS-2798)
REGIONAL DIRECTOR

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
233 Broadway
New York, NY 10279
(646) 428-1650



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION

          Plaintiff,

       - against -

NORTHSHORE ASSET MANAGEMENT, LLC,
ARDENT RESEARCH PARTNERS, L.P.,
ARDENT RESEARCH PARTNERS, LTD.,
SALDUTTI CAPITAL MANAGEMENT, L.P.,
KEVIN KELLEY, ROBERT WILDEMAN
and GLENN SHERMAN,

              Defendants.

-------------------------------------------------------------------x

**JUDGE GRIESA**

**05 CIV. 2112**

COMPLAINT

## COMPLAINT

    Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Northshore Asset Management, LLC ("Northshore"), Ardent Research Partners L.P.

("Ardent Domestic"), Ardent Research Partners Ltd. ("Ardent Offshore"), Saldutti Capital

Management, L.P. ("SCM"), Robert Wildeman ("Wildeman"), Kevin Kelley ("Kelley"), and

Glenn Sherman ("Sherman") (collectively, the "Defendants"), alleges as follows:

## SUMMARY

1.    The Commission brings this emergency enforcement action to halt ongoing

fraudulent conduct concerning Ardent Domestic and Ardent Offshore (collectively, the "Ardent

Funds"). The fraudulent conduct includes material misrepresentations and omissions to the

Ardent Funds' investors and numerous impermissible transactions that rendered the Ardent

Funds' offering materials materially misleading. In April 2003, Northshore and its principals,

Kelley, Wildeman, and Sherman purchased SCM, the Ardent Funds' investment adviser, from

Francis Saldutti ("Saldutti"), the founder of the Ardent Funds. From April 2003 to present,

Northshore and its principals have diverted approximately $37 million of the Ardent Funds'

assets to their control and invested them in illiquid securities of, and made loans to, entities in

which Northshore and its principals have an interest.

2.     ·The Defendants did not disclose to the Ardent Funds' investors that Northshore

had purchased SCM and that Northshore was managing a significant portion of the Ardent

Funds' assets. Additionally, the Defendants made numerous misrepresentations concerning

(i) the nature of the investments, (ii) the liquidity of the investments, and (iii) the use of investor

funds for undisclosed loans. For the last several months, the Defendants have refused to honor

valid redemption requests from Ardent Domestic investors. The fraud is ongoing, and despite

repeated requests to the Defendants for information on the diverted assets, the Defendants have

provided little information.

## VIOLATIONS

3.    By virtue of the conduct alleged herein:

a.    The Defendants, directly or indirectly, singly or in concert, have engaged

and are engaging in acts, practices and courses of business, that constitute

violations of Section 17(a) of the Securities Act of 1933 (the "Securities

Act"), 15 U.S.C. § 77q(a).

b.　　The Defendants, directly or indirectly, singly or in concert, have engaged

and are engaging in acts, practices and courses of business that constitute

violations of Section 10(b) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. §

240.10b-5.

c.　　Defendants Northshore and SCM, aided and abetted by Defendants

Kelley, Wildeman, and Sherman, directly or indirectly, singly or in

concert, have engaged and are engaging in acts, practices and courses of

business, that constitute violations of Sections 206(1) and 206(2) of the

Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. §§ 80b-

6(1) and 80b-6(2).

4.　　Unless the Defendants are preliminarily and permanently restrained and enjoined,

they will continue to engage in the acts, practices and courses of business set forth in this

Complaint and in acts, practices and courses of business of similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

5.　　The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d)(1) of the Exchange Act, 15

U.S.C. § 78u(d)(1), and Section 209 of the Advisers Act, 15 U.S.C. § 80b-9, seeking to restrain and

enjoin permanently the Defendants from engaging in the acts, practices and courses of business

3

alleged herein.

6.      The Commission also seeks, as immediate relief, a temporary restraining order against the Defendants, asset freezes against the Defendants, the appointment of a temporary receiver over Northshore, Ardent Domestic, Ardent Offshore, and SCM, verified accountings from the Defendants, expedited discovery, and an order prohibiting the Defendants from destroying or altering documents.

7.      Finally, the Commission seeks a judgment ordering the Defendants to disgorge ill gotten gains with prejudgment interest thereon, and ordering the Defendants to pay civil money penalties pursuant to Section 20(c) of the Securities Act, 15 U.S.C. § 77t(c), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). The Commission also seeks a judgment ordering Defendants Northshore and SCM to pay civil money penalties pursuant to Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa, and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events and omissions giving rise to the Commission's claims occurred in the Southern District of New York, including the facts that Ardent Domestic is a New York limited liability partnership that

4

maintains offices in this District, Ardent Domestic received investor funds in this District, and the Defendants misappropriated investor funds for personal use from bank accounts serviced by banks in this district.

## THE DEFENDANTS

10.    **Northshore** is a Delaware limited liability company based in Chicago. Northshore has three principals: Kelley, Sherman and Wildeman. In April 2003, Northshore purchased all the partnership interests in SCM, the General Partner of Ardent Domestic and the investment adviser to Ardent Domestic and Ardent Offshore.

11.    **Ardent Domestic** is a hedge fund structured as a New York limited partnership that was organized by Saldutti in February 1992. According to its offering memorandum, Ardent Domestic's principal place of business is 153 East 53rd Street, New York, New York, and the object of Ardent Domestic is to achieve "superior capital appreciation over the long-term through the purchase, sale and short sale of public market securities in the technology industry." On March 23, 1992, Ardent Domestic filed an exemption from registration on Form D with the Commission. Ardent Domestic maintains prime brokerage accounts at Banc of America Securities ("BOA"). As of December 31, 2004, Ardent Domestic had 57 investors and approximately $38 million in assets.

12.    **Ardent Offshore** is also a hedge fund structured as an open-ended limited liability investment company incorporated in September 1997 under the International Business Companies Act of 1989 of the Commonwealth of the Bahamas. Ardent Offshore maintains offices in Nassau, Bahamas. SCM has acted as Ardent Offshore's investment adviser since July 1998, and has managed it in an identical manner as Ardent Domestic. Ardent Offshore

maintains prime brokerage accounts at BOA. As of December 31, 2004, Ardent Offshore had approximately $19.8 million in assets.

13.    **SCM** is a New York limited partnership located in New York, New York. Saldutti founded SCM in 1992 and was its General Partner until April 2003. In April 2003, Northshore purchased all of the partnership interests in SCM, including Saldutti's general partnership interest. As part of the transaction, SCM's Limited Partners received limited partnership interests in Ardent Domestic. SCM has been the General Partner of, and investment adviser to, Ardent Domestic since 1992. SCM has acted as Ardent Offshore's investment adviser since July 1998.

14.    **Kelley,** age 49, resides in Greenwich, Connecticut. Kelley is a founder and one of the three principals of Northshore and during the relevant period acted as its Chief Executive Officer.

15.    **Wildeman,** age 41, resides at 2624 Breckenridge Lane, in Chicago, Illinois. Wildeman is one of Northshore's principals and its Managing Partner.

16.    **Sherman,** age 39, resides at 550 N. Kingsberry, in Chicago, Illinois. Sherman is one of the three principals of Northshore.

## OTHER RELEVANT ENTITIES AND INDIVIDUALS

17.    **Saldutti,** age 56, resides in Pound Ridge, New York. Saldutti founded Ardent Domestic in 1992 and Ardent Offshore in 1997. From 1992 to April 2003, Saldutti was the managing General Partner of SCM, Ardent Domestic's general partner and the Ardent Funds' investment adviser. In April 2003, Saldutti sold his general partnership interest in SCM to Northshore, and entered into an employment contract with Northshore whereby Saldutti became

6

a Senior Managing Director at Northshore. As Senior Managing Director, Saldutti continued as portfolio manager to the Ardent Funds.

18.    **BOA** is the custodian and the prime broker of the Ardent Funds. The Ardent Funds' prime brokerage accounts were serviced by BOA account representatives located in New York, New York.

## FACTS

### A.    The Ardent Funds

19.    Ardent Domestic's Confidential Private Offering Memorandum (the "Domestic PC    ') represents that Ardent Domestic's investment objective is to achieve "superior capital appreciatio    'er the long-term through the purchase, sale and short sale of public market securities in the technolo; industry."

20.    In addition, the Domestic POM provides that Ardent Domestic's investment portfo will consist primarily of common stocks and cash equivalents.

21.    Although the Domestic POM allows Ardent Domestic to invest in debt or preferrec securities, which are not convertible into common stock, it states that such investments "will not ordinarily represent a large portion of the Partnership's portfolio in relation to its holdings of equi securities."

22.    Further, the Domestic POM represents that Ardent Domestic will maintain a minin    ι level of diversification in its portfolio; specifically, it states: "[t]he General Partner will not inves    )re than 15% of the net assets of the Partnership…in the securities of any one company."

23.    The Domestic POM also represents that "[a]ll investment decisions concerning [Aι    ιt Domestic's] assets and funds will be made by Mr. Saldutti."

7

24.     As in the Domestic POM, Ardent Offshore's Offering Memorandum (the "Offsho

POM") represents that the main objective of Ardent Offshore is "superior capital appreciation ov    le

long-term with no more than moderate risk."

25.     The Offshore POM also represents that: (i) Ardent Offshore's portfolio will consis

primarily of publicly traded technology oriented common stocks and cash equivalents; (ii) Saldut    ill

make all investment decisions concerning Ardent Offshore's assets and funds; (iii) Ardent Offsho    vill

maintain a minimum level of diversification by representing that "[t]he Trading Advisor will not    est

more than 15% of the net assets of the Company . . . in the securities of any one company;" and (

notice will be given to each Ardent Offshore shareholder within 15 business days if there is "any    nge

in the delegation of operational responsibilities by [Ardent Offshore]" or if there is "any material    nge

in the trading policies of [Ardent Offshore]."

26.     As set forth in more detail below, after Northshore purchased SCM, the Defendan

engaged in unlawful conduct, including misappropriation of investor funds through improper loar    nd

several material misrepresentations and omissions concerning: (1) Northshore's ownership of SC

(2) the management of the Ardent Funds, and (3) the nature of the Ardent Funds' investments.

Furthermore, Northshore and its principals made a series of inappropriate investments that render

statements in the Ardent Funds' offering materials materially misleading.

**B.     Northshore's Purchase of SCM and the Defendants' Failure to Disclose to Investors**

27.     In late 2002, Kelley approached Saldutti about selling SCM to Northshore. Kelley

explained that Northshore was attempting to purchase a variety of hedge funds so that the hedge    l

investors could move their investments within an umbrella of Northshore-controlled hedge funds

Kelley also explained that Northshore could provide assistance in helping develop a new hedge fi    .

28.    In the first quarter of 2003, Saldutti, Kelley, Wildeman, and Sherman met in Conn    cut

to discuss Northshore's possible purchase of SCM. During this meeting Kelley, Wildeman, and

Sherman described the Northshore strategy in detail and explained the potential benefits of selling    'M

to Northshore. Kelley, Wildeman, and Sherman told Saldutti that Northshore wanted to build an

aggregation of hedge funds and that the hedge funds could then be bundled and sold to a large mo

management firm. They then told Saldutti that Northshore would raise money and market the Ar

Funds. In addition, they represented that Wildeman had significant experience in cash manageme    nd

could take over the back office operations and cash management for the Ardent Funds.

29.    Saldutti told Kelley, Wildeman, and Sherman that he was interested in receiving hi    r

returns on his cash investments, but that the cash investments had to be safe, short-term and liquic

investments in case Saldutti needed the cash to invest on behalf of the Ardent Funds. Saldutti hac

always conservatively managed the Ardent Funds' cash leaving it in the BOA prime brokerage ac    nt.

He believed that Wildeman would take over management of the Ardent Funds' cash and be able t

achieve higher returns on the Ardent Funds' significant cash positions. During this meeting, Sald

agreed to sell SCM to Northshore.

30.    In or about April 2003, Northshore agreed to purchase all the partnership interests

SCM for $12 million, payable in installments of $4 million upon closing and $500,000 quarterly

thereafter. Pursuant to an employment agreement with Northshore, Saldutti continued to have pul    'e

responsibility for managing the Ardent Funds assets.

9

## C.    The Defendants Made Inappropriate Investments

31.     After its purchase of SCM and in breach of the Ardent Funds' offering materials a

without disclosure to investors, Northshore took over management of the significant cash positior    f

the Ardent Funds.

32.     Shortly after Northshore acquired SCM, Wildeman contacted Saldutti to discuss tl

returns on the Ardent Funds' cash at BOA. Thereafter, Wildeman met with a representative of B    's

prime brokerage unit in New York City, where the Ardent Funds' cash investments were held to ι    uss

the Ardent Funds' cash returns. The BOA representative informed Wildeman that BOA was payi    the

Ardent Funds the "Fed Fund" rate minus 50 basis points on the Ardent Funds' cash. Wildeman tι

BOA that he could invest the cash in other investment vehicles offering returns of 3% to 4%.

33.     In or about the middle of 2003, Saldutti began transferring Ardent Funds' cash to

Northshore for investment in "alternative cash investments." Saldutti issued instructions for thesι

transfers to BOA account representatives in New York, New York.

34.     After taking over management of the cash portions of the Ardent Funds, Northshoι

made a series of inappropriate investments using the Ardent Funds' cash. These investments incl    :

- approximately $3.6 million in AusAm Biotechnologies, Inc. ("AusAm"), a private
  biotechnology company of which Sherman is a major shareholder and a director;

- approximately $1.0 million in NS Global Opp Fund, a partnership owned by
  Northshore;

- approximately $611,000 in NS Special Situation Fund I, a partnership owned by
  Northshore;

- approximately $13.1 million in Startech  Environmental Corporation ("Startech"), a
  publicly traded company in which Northshore owns approximately 20% of the
  outstanding common stock; and

10

- using $5 million to pay for Northshore's purchase of SCM.

**D. The Defendants Engaged in Self-Dealing With Ardent Funds' Cash**

35.    In August 2004, Northshore received a $10 million loan from Ardent Domestic in form of a 90-day "short-term" loan, which was due in full on November 30, 2004. Northshore ha    iled to repay any portion of the loan or any interest owing on the loan.

36.    In addition, Ardent Domestic has held a note receivable since June 2003 for approximately $5.1 million in NSAM Partners, of which Wildeman, Sherman and Kelley are the : owners. It appears that there have been no repayments or interest payments on this loan.

37.    Northshore received an additional $1.25 million as a purported loan from the Offsl Fund for which no documentation was prepared. Northshore has not repaid this loan.

**E.    The Defendants Made Numerous Misrepresentations and Omissions**

38.    In connection with the above-described investments and loans, the Defendants mac numerous misrepresentations and omissions.

39.    The Defendants did not disclose to the Ardent Funds' investors that Northshore wa actively managing a significant portion of the Ardent Funds' assets and investing those assets in il    tid securities.

40.    The Defendants also did not disclose that Northshore was investing the Ardent Fun assets in illiquid securities of entities in which Northshore's principals had an interest or that the *l*    :nt Funds' were making loans to entities controlled by Northshore or its principals.

41.    The Offshore POM specifically requires notice be given to each shareholder when    e is a change in the operational responsibilities of Ardent Offshore and when there is any material cl    ge

11

in the trading policies of Ardent Offshore. SCM, Northshore, Wildeman, Sherman and Kelley ne

gave such notice.

42.     Furthermore, Northshore's investments and loans rendered materially misleading t

sections of the Domestic POM and the Offshore POM concerning (i) how the Ardent Funds' asse

would be invested and (ii) who would be making all investment decisions concerning the Ardent     ds'

assets.

**E.     Northshore and SCM Inappropriately Denied Investors' Redemption Requests**

43.     Northshore and SCM have inappropriately denied Ardent Domestic investors'

withdrawal requests. Saldutti informed the investors requesting withdrawals that because Northsh

invested the Ardent Funds' cash in improper and illiquid investments and therefore was unable to

transfer cash to Ardent Domestic's BOA accounts, the Ardent Funds were unable to satisfy the

redemption requests.

**F.     Recent Conduct and Ongoing Risk to the Public**

44.     In the last 2 weeks: (i) the Commission staff visited Northshore's offices and reque     l to

speak to Northshore's principals, but their request was denied; (ii) the Commission staff made rep     d

requests to Northshore and its lawyers to find out basic information about the status of the Ardent

Funds' assets, but Northshore failed to provide any substantive information beyond vague reassur     s

that funds were not misused; (iii) Northshore's attorneys told the Commission staff that they were

concerned that Northshore's principals may seek to dissipate Northshore's assets; (iv) Northshore

attorneys informed the Commission staff that Northshore intended to file for Chapter 11 bankrupt

permitting Northshore to control the liquidation of assets, which are rightfully the assets of the Ar     t

Funds and which Northshore diverted for its own uses; (v) immediately following a Commission :     :

12

request to delay the bankruptcy filing, Northshore, SCM and NSCT filed for bankruptcy in the N    lern

District of Illinois; and (vi) Department of Justice officials executed 2 search warrants at Northsh    's

offices in New York and Connecticut.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (All Defendants)

45.    Paragraphs 1 through 44 are realleged and incorporated by reference as if fully set
forth herein.

46.    From at least April 2003 through the present, the Defendants, in the offer and sale
of securities, by the use of the means and instruments of transportation or communication in
interstate commerce or by the use of the mails, directly and indirectly, have employed and are
employing devices, schemes and artifices to defraud.

47.    From at least April 2003 through the present, the Defendants, in the offer and sale
of securities, by the use of the means and instruments of transportation or communication in
interstate commerce or by the use of the mails, directly and indirectly, have obtained and are
obtaining money and property by means of untrue statements of material fact or omissions to
state material facts necessary in order to make the statements made, in light of the circumstances
under which they were made, not misleading, and have engaged and are engaging in
transactions, practices or courses of business which operate as a fraud and deceit upon their
investors.

48.    The Defendants knew or were reckless in not knowing that the representations
and omissions set forth herein were false and misleading.

49.    By reason of the activities described herein, the Defendants have violated and are

13

violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (All Defendants)

50.    Paragraphs 1 through 49 are realleged and incorporated by reference as if fully set forth herein.

51.    From at least April 2003 through the present, the Defendants, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact and have omitted and are omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and courses of business which operate as a fraud and deceit upon investors.

52.    The Defendants knew or were reckless in not knowing that the representations and omissions set forth herein were false and misleading.

53.    By reason of the activities described herein, the Defendants have violated and are violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

## THIRD CLAIM FOR RELIEF
### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Northshore and SCM)

54.    Paragraphs 1 through 53 are realleged and incorporated by reference as if fully set

14

forth herein.

55.     From at least April 2003 through the present, Northshore and SCM, both

investment advisers, directly or indirectly, singly or in concert, by the use of the means or

instruments of transportation or communication in interstate commerce, or of the mails, have

employed and are employing devices, schemes and artifices to defraud the Ardent Funds'

investors, and have engaged and are engaging in transactions, practices and courses of business

which operate as fraud and deceit upon these investors.

56.     The Defendants knew or were reckless in not knowing that the representations

and omissions set forth herein were false and misleading.

57.     By reason of the activities described herein, Northshore and SCM have violated

and are violating, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and

80b-6(2).

### FOURTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Kelley, Wildeman and Sherman)

58.     Paragraphs 1 through 57 are realleged and incorporated by reference as if fully set

forth herein.

59.     From at least April 2003 through the present, Kelley, Wildeman and Sherman,

directly or indirectly, singly or in concert, aided and abetted Northshore's and SCM's violations

of Sections 206(1) and 206(2) of the Advisers Act. Specifically, Kelley, Wildeman and Sherman

knowingly provided substantial assistance to Northshore and SCM in making the materially false

and misleading representations and omissions and misappropriations of the Ardent Funds' assets

alleged herein.

15

60.    The Defendants knew or were reckless in not knowing that the representations and omissions set forth herein were false and misleading.

61.    By reason of the activities described herein, Northshore and SCM have aided and abetted violations, and are aiding and abetting violations, of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### II.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Defendants Northshore, SCM, Wildeman, Kelley and Sherman, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

16

## III.

An Order appointing or continuing the appointment of a receiver for Northshore, SCM, Ardent Domestic, and Ardent Offshore to (1) preserve the status quo, (2) ascertain the financial condition of Northshore, SCM, Ardent Domestic, and Ardent Offshore, and the disposition of investor funds, (3) prevent further dissipation of Northshore, SCM, Ardent Domestic, and Ardent Offshore's property and assets, to prevent loss, damage, and injury to investors, (4) preserve Northshore, SCM, Ardent Domestic, and Ardent Offshore's books, records, and documents, and (5) be available to respond to investor inquiries.

## IV.

An Order directing the Defendants, their agents, banks, debtors, bailees, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with the Defendants who receive actual notice of said Order by personal service, facsimile, or otherwise, and each of them, to hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any of the Defendants' assets, funds or other properties of any kind wherever situated, and assets over which said Defendants have control by signatory authority or otherwise.

## V.

An Order directing each of the Defendants to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each Defendant under penalty of perjury, setting forth:

17

(1)     All assets, liabilities and property currently held directly or indirectly by or for the
        benefit of such Defendant, including but not limited to bank accounts, brokerage
        accounts, investments, business interests, loans, lines of credit, and real and
        personal property wherever situated, describing each asset and liability, its current
        location and amount;

(2)     All money, property, assets, and other income received by such Defendant, or for
        their direct or indirect benefit, in or at any time from January 1, 2003 to the date
        of the accounting, describing the source, amount, disposition and current location
        of each of the items listed;

(3)     All assets, funds, securities, real or personal property of customers of such
        Defendant, transferred to or for the benefit of such Defendant in or at any time
        from January 1, 2003 to the date of the accounting, and the disposition by such
        Defendant of such assets, funds, securities, real or personal property;

(4)     All money, property, assets and other income transferred from such Defendant,
        including transfers to any bank account, brokerage account or other account, or to
        any individual, or entity, in or at any time from January 1, 2003 to the date of the
        accounting; and

(6)     The names and last known addresses of all bailees, debtors, and other persons and
        entities which are currently holding the assets, funds or property of such
        Defendant.

## VI.

An Order permitting expedited discovery.

18

## VII.

An Order enjoining and restraining each of the Defendants, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

## VIII.

A Final Judgment determining each of the Defendants must disgorge their ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

## IX.

A Final Judgment determining each of the Defendants must pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and determining that Defendants Northshore, SCM, Wildeman, Kelley and Sherman must pay civil money penalties pursuant to Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

19

**X.**

Such other and further relief as to this Court deems just and proper.

Dated:  New York, New York
       February __, 2005

By: _____
       Mark K. Schonfeld (MS-8531)

       Securities and Exchange Commission
       233 Broadway
       New York, New York  10279
       Telephone (646) 428-1500

       Attorneys for Plaintiff

Of Counsel:
Helene T. Glotzer (HG-8531)
Alistaire Bambach (AB-5891)
Jack Kaufman (JK-3050)
Bruce Karpati (BK-4671)
Justin W. Arnold (JA-1159)
Eva M. Kolb (EK-5042)
Timothy P. Wei (TW-1135)

20